FREDERICKA HOMBERG WICKER, Judge.
hThis appeal arises from a suit on an open account, filed on behalf of Plaintiff-Appellee Care Services, Inc. (“Care”), aplumbing company, against Defendant-Appellant DBR Associates, L.L.C. (“DBR”), a general cpntracting firm, seeking $10,580.30 for services performed in 2008 to alleviate drainage problems at South-wood Patio Apartments (“Southwood”). The trial court rendered judgment in favor of Care and against DBR in the full amount of $10,580.30, plus $8,000 in attorney’s fees, plus all costs and judicial interest. For reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

DBR is a general contracting firm. In 2004, Summit Property Management (“Summit”), the’ agent for Southwood, hired DBR to construct an administrative office/community center building at the Southwood complex. Southwood had recurring drainage problems that frequently *938 paused the property to flood and Summit often used Care to resolve plumbing and drainage issues. Delayed by | ¡¡Hurricane Katrina, DBR commenced pile-driving operations in February 2008. Subsequently, flooding problems arose at the job site, leading to the present litigation.
Though there is conflicting testimony, on March 7, 2008, either a Southwood maintenance worker or a Summit manager (hereinafter “Summit/Southwood” in reference to this call) called Care explaining that storm drains in the office parking area were clogged.[1] Unable to clear the drain with its own equipment, Care enlisted Blue Flash Sewer Service (“Blue Flash”), a subcontractor that operated more powerful equipment. Blue Flash was similarly unsuccessful and suspected that something from the construction operation may have broken the drain line. Majorie Tolar, co-owner of Care, testified that Blue Flash’s camera showed that the line appeared to be obstructed by a piling. For its effort to unstop the drain on March 7, 2008, Blue Flash billed Care $1,655. Care, in turn, initially billed this work to Southwood. However, after it was settled that DBR was responsible for the pile-driving on the site, Care would later include these charges from Blue Flash in its bill to DBR.
The flooding continued. As a result, on April 2, 2008, Connie Williams, DBR’s project manager, sent a facsimile to Care requesting Care to visit the Southwood complex, determine if the problem could be corrected by modifying a drain manhole, and, if so, provide an estimate to make the changes. All parties concede that this was the first time DBR contacted Care directly to solicit its 14services. Moreover, the record is unclear on whether an estimate was ever given.[2] Regardless, Care took on the project and enlisted Blue Flash for a second time to assist in the project. On April 24, 2008, Blue Flash confirmed that a piling struck and blocked the drain line. Again, Blue Flash billed Care for its services, this time in the amount of $1,200. And again, Care would later include these charges in its bill to DBR.
Eventually, Care installed a pump and subsurface drainage to alleviate the flooding. Once the issue was resolved and its work was completed, Care sent DBR an invoice for the work it performed at South-wood, totaling $10,580.30 (“Invoice 95809”). Invoice 95309 listed the hours worked per day by each Care employee, each employee’s hourly rate, and the materials used. In addition, the invoice included a “Large Jet Charge 3-7-8 & 4-24-8” for a total of $4,300. Ms. Tolar explained that this was a single charge for the work Care enlisted *939 Blue Flash to perform on April 24 in response to Ms. Williams’s facsimile and also for the work Care enlisted Blue Flash to perform on March 7 in response to the SummiVSouthwood maintenance worker’s complaint, prior to any communications between Care and DBR. When asked why Care included the March 2008 charge in DBR’s bill, Ms. Tolar testified that “it was evident that that piling,” which had been driven into the drain line, “was what was the problem all the time” and Care “felt like [DBR] created the ... original problem.” Therefore, Care billed this work to DBR rather than to Summit/Southwood. When asked why Care included more man-hours than what is reflected in Care’s handwritten records, Ms. Tolar ^testified that when a supervisor was present at the job, Care workers would sometimes include their supervisor’s man-hours on their own timesheets.
Despite receiving the invoice from Care, DBR failed to make any payments towards the amount owed. Subsequently, Care sent a series of demand letters to DBR asking for payment of the full amount of Invoice 95309. Still, DBR made no payment to Care. On May 3, 2011, Care filed a Petition on Open Account against DBR seeking $10,580.30. Trial was held on March 21, 2014, and one month later, on April 21, 2014, the trial court rendered judgment in favor of Care and against DBR in the full amount of $10,580.30, plus attorney fees in the amount of $8,000, costs of court, and judicial interest. On May 20, 2014, DBR filed its Motion for Appeal.
On appeal, DBR concedes that it hired Care to perform drainage work in April 2008 but argues that Care was not entitled to recover $10,580.30 in damages and $8,000 in attorney fees. DBR argues that Invoice 95309 incorrectly included work performed in March 2008 before DBR contracted with Care and overcharged DBR by inflating the hours Care employees spent on the job. As a result, DBR argues that the demand letter incorrectly set forth the amount owed and the trial court erred in awarding Care $8,000 in attorney fees.
In response, Care argues that the trial court had a reasonable factual basis for awarding Care the full amount of Invoice 95309, considering that DBR caused the flooding problem, DBR hired Care, and DBR never questioned the amount of the invoice until suit was filed. As to the amount of hours billed, Care argues that the trial court made a credibility determination and found that the time billed for Care’s employees was accurate. Accordingly, Care argues that the demand letter correctly set forth the amount owed and the trial court properly awarded attorney fees.
I (DISCUSSION
Appellant assigns three related errors: (1) that the trial court erred in awarding Care $2,492.71 for work Care performed in response to Summit/Southwood’s initial March 2008 solicitation; (2) that the trial court erred in awarding Care $438.75 in payments for hours of work that are not reflected in Care’s internal business records; and (3) that the trial court erred in awarding Care $8,000 in attorney’s fees because Care’s written demand incorrectly stated the amount DBR owed Care.
Two of appellant’s three assignments of error raise issues involving the trial judge’s factual determinations. The standard of appellate review of factual determinations is manifest error. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). In Stobart, the court explained this standard as follows:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in *940 the absence of “manifest .error” or unless it is “clearly wrong.” This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) the appellate court must find from the record that a reasonable factual basis does not ejdst for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was ■a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness’s story, or the story itself |7is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
This court has recognized that the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. (Internal citations omitted).
Thus, in order to reverse the judgment in the present case, we must find that no reasonable factual basis existed for the findings of the trier of fact, and also that based on the record those findings were manifestly erroneous.
As the Supreme Court explained in Stobart, the first inquiry is whether the factual findings made by the trier of fact are reasonable on the entire record. Stobart v. State through DOTD, supra. Admittedly, Invoice 95309 included work performed in March 2008 before DBR had contacted Care. Moreover, Invoice 95309 appears to include more man-hours than what is reflected in Care’s handwritten records. However, the trier of fact did not view these anomalies as being significant on the question of whether Care accurately billed DBR for the work it performed. While this Court may well have made different factual findings on this point, that is not the standard of review. Rather, the question is whether the facts found are based on a reasonable evaluation of the testimony and evidence of record, giving deference to the credibility determinations made by the trier of fact.
*941 | ^Appellant argues that the trial court erred in awarding Care $2,492.71 for work Care performed in March 2008 in response to the Summit/Southwood initial trouble call. However, the trial court heard testimony and reviewed evidence explaining that Care included the March 2008 charges in Invoice 95809 because the drainage issues were eventually concluded to have been caused by DBR’s pile-driving operations. Ms. Tolar, as the co-owner of Care, has approximately forty years of experience in the plumbing business and oversees Care’s billing process. She testified that the work, including the Blue Flash sub-contracted work, was included in Invoice 95309 because Care viewed all the work as a whole and all related to the piling that had struck the drainage line. Given the long history of similar drainage issues at the Southwood complex, it is not surprising that the original trouble-shooting request to Care came from South-wood/Summit representatives. Nor does it impact the trial court’s ultimate conclusion that the work Care performed in March and in April was connected to the underlying pile-driving issue that DBR was responsible for. Indeed, DBR’s own representative conceded that the drainage issue arose after DBR’s pile-driving operations in February 2008. The trial court’s finding of fact was based on a reasonable evaluation of the testimony and evidence and should not be disturbed by this Court on review, which does not have the benefit of being able to make credibility determinations.
The trial court also heard testimony and reviewed the evidence regarding the amount of man-hours that were included in Invoice 95309. Appellant argues that the trial court erred in awarding care $438.75 in payments for hours of work that Care’s internal records show were never incurred. However, at trial, Ms. Tolar explained that Care workers often includ-ed the time of their supervisors when Uthose supervisors were present at the worksite. Ms. Tolar further explained that the total amount of both worker and supervisor hours would be what Care would charge their clients on their invoices. Though this Court may have found that those hours should not have been listed as one charge on Invoice 95309, there clearly was a reasonable factual basis for the trial court finding that they could properly be charged as they were. Again, a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” And again, like the issue of the March charges, the trial court’s finding of fact that these man-hours should have been billed on the invoice as they were based on a reasonable evaluation of the testimony and evidence and should not be disturbed by this Court on review.
The finding that DBR did in fact owe Care the amount Care demanded on open account is reasonable. Therefore, we uphold that finding.
Appellant’s final assignment of error alleges that because Care’s written demand incorrectly stated the amount DBR owed, the trial court erred in awarding Care $8,000 in attorney’s fees under Louisiana open-account law. La. R.S. 9:2781(A) provides:
When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this *942 Section. If the claimant and his attorney have expressly agreed that the debt- or shall be liable for the claimant’s attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.
|inAppeIlant argues that because the trial court erred in awarding Care payment for the March 2008 services and for the work not reflected in Care’s internal records, Care’s written demand for the $10,580.30 was incorrect. The Louisiana Supreme Court has interpreted the “correct amount” requirement strictly, holding that a claimant cannot recover fees under La. R.S. 9:2781 unless the court decides that he is entitled to the full amount requested in the written demand sent at least 30 days before trial. Hayne v. Hardy, 802 F.2d 826, 829 (5th Cir.1986) (citing Beier Radio v. Black Gold Marine, 449 So.2d 1014, 1016 (La.1984)). However, as discussed above, the trial court decided that Care was entitled to the full amount of $10,580.30 that it demanded. For the reasons outlined above, this Court will not disturb that finding of fact. Therefore, it stands that Care’s written demand on DBR was for the correct amount owed. Accordingly, Appellant’s final assignment of error is without merit.

DEGREE

Thus, for the reasons outlined above, we affirm the trial court’s judgment.

AFFIRMED

. Compare R. at 95 (where Ms. Tolar, co-owner of Care, testified that the March 2008 call "came in from the maintenance guy, which [was] probably Keith Keith called it in Keith and Mitch King called in most of the calls” ordering work at Southwood) with Ex. D-ll, at 22-23 (where Michael Peralta, President of Summit, testified that Summit, as agent for Southwood, should have ordered the March 2008 work, reasoning that Tanya Kinchen, Summit’s regional property manager, or the on-site manager probably made the call). Mr. Peralta went on to explain that in 2008 Summit’s on-site manager was “either Nish BCing or Lynette King.” Ex. D-ll, at 9. Ms. Tolar was likely referring to Nish King, Summit's site manager, when she testified that many of the calls for Southwood came from Mitch King.

. Compare R. at 78 (where Ms. Tolar testified "we would not have given an estimate .... we could not have given [DBR] an estimate because we didn't know what the problem was” with R. at 126 (where Connie Williams, the Project Manager for DBR, testified that she never received a written estimate from Care but that Glen "Buddy” Munkres, a former Care employee, provided an estimate of $1600 over the phone). Mr. Munkres denied giving Ms Williams this estimate. R. at 135.